```
           IN THE UNITED STATES DISTRICT COURT FOR
           THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                              *
JANET L. Herron, et al.,
                              *
     Plaintiffs,
v.                            *      CIVIL NO.: WDQ-04-1977

MAYOR AND CITY COUNCIL OF     *
ANNAPOLIS, MARYLAND,
                              *
     Defendants.
*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION AND ORDER


Janet Herron sued the Mayor and City Council of Annapolis (the "Defendants") for, *inter alia*, deprivation of property in violation of the Fifth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights.  For the following reasons the Defendant's motion to dismiss will be granted, and Herron's motions for class action certification, summary judgment and leave to file an amended complaint will be denied.


I.  Background

On August 5, 1987, the Anne Arundel County Council passed an ordinance codified as Article 24, Title 7 of the Anne Arundel County Code which permits the County to fix, impose, and finance capital costs of improvements and facilities needed to accommodate new construction or development.  Compl. ¶¶ 6-7.  The

1

ordinance requires that all new developments pay "development impact fees," i.e., a proportionate share of the costs for land, capital facilities, and other expenses necessary to accommodate development impact on existing public school and transportation facilities within the affected district. *Id.* at ¶¶ 7, 10. Development impact fees must be paid to the County before the issuance of a building permit or zoning certificate. *Id.* at ¶ 8. Under §7-110 of the ordinance, if fees collected have not been expended or encumbered within six years, the current property owner may be entitled to a refund.

In 1999, the Mayor and City Council of Annapolis passed Ordinance 0-36-98, which permits the City of Annapolis to collect school impact fees for all new residential construction within the city, provided such fees "are spent within the Annapolis High School Feeder System to reflect the needs of the City residents." Compl., Ex. 1 (Annapolis City Ordinance 0-36-98).

On November 15, 2000, the County and the City of Annapolis entered into an "Agreement to Collect Impact Fees," by which Annapolis acts as an agent for the County to collect development impact fees for school construction associated with new residential development in the city. Compl., Ex. 2 (Agreement to Collect Impact Fees). Annapolis began collecting impact fees in 2001. Defendants' Opposition to Class Cert. at 2.

Herron is a property owner in Annapolis. Herron Affidavit ¶

3.  The school impact fee for Herron's property was paid by M&K, LLC on May 29, 2003.  Elliott Affidavit ¶ 6.

Herron argues that Annapolis collected impact fees without implementing capital improvements for the school system, and that excess school capacity made such improvements unnecessary. Accordingly, Herron alleges that the fees are: 1) an unlawful taking in violation of the Fifth Amendment to the United States Constitution; 2) an unlawful deprivation of property in violation of Article 24 of the Maryland Declaration of Rights; 3) a violation of Article 23A of the Annotated Code of Maryland; and 4) a violation of Article 24, §7-109 of the Anne Arundel County Code.  Herron seeks compensatory damages and a refund of the impact fees collected from the residents of Annapolis since 2001.

II.  Analysis

A.  Defendants' Motion to Dismiss

The Defendants have moved to dismiss arguing that, *inter alia,* Herron lacks standing to sue because she did not pay the impact fee on her property and therefore has not been injured. Herron argues that she has been injured and therefore has standing because, although a developer paid the impact fee on her property, the cost of the fee was included in the purchase price of her home.

1.  Standard of Review

A Fed.R.Civ.P. 12 (b) motion to dismiss should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002), (*citing Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *Adams v.* Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).  All allegations are treated as true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Laboratories, Inc. v. Raj Matkari, et. al.*, 7 F.3d 1130, 1134 (4th Cir. 1993). If any possible basis for relief has been pled, the Court must deny the motion to dismiss. *Garland v. St. Louis*, 596 F.2d 784 (8th Cir. 1979), *cert. denied*, 444 U.S. 899 (1979); *Swierkiewicz*, 534 U.S. at 514.

In deciding a Rule 12(b) motion, the Court will consider the facts stated in the complaint and any attached documents. *Biospherics, Inc., v. Forbes, Inc.*, 989 F.Supp. 748, 749 (D. Md. 1997), *aff'd*, 151 F.3d 180 (4th Cir. 1998)). The Court may also consider documents referred to in the complaint and relied upon by plaintiff in bringing the action.  *Id*.  In ruling on a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the Court may consider exhibits outside the pleadings without converting the motion to one for summary judgment.  *Williams v. United States,* 50 F.3d 299, 304 (4th Cir.

1995).

    2.  Standing Doctrine

Article III of the Constitution limits the jurisdiction of the federal courts to the adjudication of "cases" and "controversies."  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559-560 (1992); *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 471 (1982); *Friends for Ferrell Parkway v. Stasko;* 282 F.3d 315 (4th Cir. 2002).  To present a justiciable "case" or "controversy" a litigant must have "'standing' to challenge the action sought to be adjudicated in the lawsuit."  *Valley Forge,* 454 U.S. 464 at 758; *see also Lujan,* 504 U.S. 555.  Standing, in turn, requires a showing that: 1) the plaintiff suffered an invasion of a legally protected interest (an injury in fact) which is (a) concrete and particularized and (b) actual or imminent rather than conjectural or hypothetical; 2) there is a causal connection between the injury and conduct complained of; and 3) it must be likely, not merely speculative, that the injury will be redressed by a favorable decision.  *Lujan*, 504 U.S. 555 at 560; *Valley Forge Christian College*, 454 U.S. 464.

The party invoking federal jurisdiction bears the burden of establishing these elements and each element must be supported "with the manner and degree of evidence required at the successive stages of the litigation."  *Id* at 561.

3.   Herron Has Not Demonstrated Standing

It is undisputed that M&K, LLC (the builder), not Herron, paid the impact fee on her home on May 23, 2003.  Elliott Affidavit, Ex. 1.  Herron contends that although M&K paid the impact fee, the cost of the fee was reflected in the purchase price of her property and therefore she, not M&K, should be considered the injured fee payer.  On this basis, Herron argues, she has standing to challenge the ordinance's legality.

Discovery in this case has concluded; however, Herron has offered no evidence that the impact fee was included in the purchase price of her property.  Nor has Herron offered any evidence that M&K, as a general practice, included the fee in the selling price of its homes.  Instead, Herron asserts that the Court must *assume* that M&K passed the cost of the fee along to Heron to maximize its profits.

Although Herron plausibly argues that builders and developers would pass along the impact fee to buyers *if possible*, she has offered no evidence that they did.  Under conditions of high demand and limited supply, developers may be able to recoup some or all of the cost increase through an increased price of the home.  Under conditions of low demand and plentiful supply, developers may be forced to absorb some or all of increased costs and accept smaller profits.  Absent collusion, it is implausible to assume that all developers and builders in the market

6

uniformly raised their prices.  The Court may as reasonably assume that market conditions in Annapolis forced developers to bear the entire cost themselves in the form of smaller profit margins.

Herron notes that § 7-110 of the impact fee ordinance provides for refunds to current property owners, not fee payers, if the collected funds have not been spent within six years.  However, the refund provision is not evidence that builders incorporated the cost of the fees in their homes's sale prices and does not establish that Herron paid any part of the impact fee when she bought her home in 2003.  Importantly, Herron is not suing the City of Annapolis for a violation of § 7-110 and has not yet sought a fee refund under its provisions.  If there are excess—,i.e., unused fees—and Herron retains her home, she would be eligible to apply for a refund under the ordinance in 2009.

Herron also offers the 1987 report of the Impact Fee Study Committee (appointed by Anne Arundel County) which recommended that the County provide refunds to current property owners "on the assumption that the impact fee was incorporated into the value of the improved property."  Boland Affadavit, Exhibit B, P. 8.  This recommendation was incorporated in § 7-110 of the ordinance.  However, the Report recommends that refunds be provided to property owners rather than fee payers, in part, because "tracking the fee payer would be too cumbersome for the

county to administer." *Id.*   Further, the Committee offered no

evidence to support its assumption that the "impact fee was

incorporated into the value of the improved property." *Id.*

Although the Court must view the facts alleged and

inferences drawn from them in the light most favorable to the

non-moving party, Herron has offered no evidence that builders

and developers invariably included the cost of the fee in the

selling price of their homes.  Absent such evidence, she has not

established that she paid the fee when she bought her home.

Absent proof of injury, Herron lacks standing.


4.  Herron Has Failed to Establish a Constitutional

Violation

Even if Herron had shown that she paid the impact fee, she

cannot show that the impact fee ordinance is a taking in

violation of the Fifth Amendment.

Exactions (e.g. impact fees) may constitute a taking "if not

reasonably necessary to the effectuation of a substantial

government purpose." *Dolan v. City of Tigard,* 512 U.S. 374, 388

(1994).  In determining whether there is a sufficient connection

between the exaction and the government purpose, there must be a

"rational nexus" or a "reasonable relationship between the

required dedication and the impact of the proposed development."

512 U.S. 375, 2319; *see also National Association of Homebuilders*

8

*of the United States v. Chesterfield County, Va.,* 907 F.Supp. 166 (E.D. Va. 1995) *aff'd* 92 F.3d 1180 (4th Cir. 1996); *Howard County v. JJM,* 301 Md. 256 (Md. 1984); *Steel v. Cape Corporation*, 1996 WL 436012 (Md. Ct. Spec. App. 1996).

The impact fee ordinance created seven school impact fee districts which contain one or more contiguous high school feeder systems.  Article 24, § 7-109 Anne Arundel County Code.  Section 7-109 of the ordinance mandates use of the impact fees in the districts in which they are collected.  *Id.*  Annapolis lies within School Impact Fee District No. 6 which is composed of the Annapolis High Feeder System, the South River High Feeder System, and a portion of the Old Mill High Feeder System.  Cannelli Affidavit, ¶ 3.  Students residing in Annapolis generally, but not exclusively, attend schools in the Annapolis High Feeder System.  *Id.*

Herron argues that the fees paid by Annapolis residents were used to fund school improvements throughout District 6 and that no fees collected were used within the Annapolis High Feeder System.  Therefore, Herron argues, the impact fee fails the "rational nexus" test and constitutes a taking.  Herron's expert Stephen Donnelly, believes that under the  "rational nexus" test, "impact fees are appropriate only where the development being assessed will lead directly to capital expenditures for the infrastructure needed to serve that particular development."

Plaintiff's Rebuttal and Response to Defendant's Expert Report, p. 11.

This position misapprehends *Dolan*.  *Dolan* rejected the "specifically and uniquely attributable" test under which:

> if the local government cannot demonstrate that its exaction is directly proportional to the specifically created need, the exaction becomes a...confiscation of private property....We do not think the Federal Constitution requires such exacting scrutiny....

512 U.S. 374, 389-390.

As the "rational nexus" test merely requires a "rough proportionality" between the government exaction and the state interest, Anne Arundel County's impact fee ordinance appears to pass Constitutional muster.  The impact fee ordinance collects and distributes funds on a district-wide basis based on a calculation of the cost of accommodating new students.  Although impact fees from Annapolis residents may have been spent outside the Annapolis High Feeder System—and only some Annapolis residents attend the schools benefitted—such an arrangement may be reasonable.  The County must have some flexibility in the administration of its school system and, the decision to spend funds to benefit three feeder systems does not appear to offend the Constitutional requirement of "rough proportionality."

5.  Herron's Claim Should Have Been Brought in the Maryland Tax Court

Although Herron has characterized her suit as an effort to redress an unconstitutional deprivation of property, it is clearly an effort to enjoin or restrain the collection of a tax under state law.

Under 28 U.S.C. § 1341, the Tax Injunction Act (the "TIA"), a federal court cannot "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." *See also Collins Holding Corp. v. Jasper County, SC,* 123 F.3d 797 (4th Cir. 1997); *Antosh v. City of College Park,* 341 F.Supp.2d 565 (D.Md. 2004).   The Tax Injunction Act applies to county as well as state taxes. *Collins Holding Corp.,* 123 F.3d at 799 at n.2.

To determine if a state or local law is a tax or a fee, the Court must consider: 1) the entity that imposes the charge; 2) the population subject to the charge; and 3) the purposes served by the money obtained. *Valero Terrestial Corp. v. Caffrey*, 205 F.3d 130, 134 (4th Cir. 2000); *Antosh,* 341 F.Supp.2d at 568. When the result of the three-part inquiry is ambiguous, "the most important factor becomes the purpose behind the statute, or regulation, which imposes the charge." *Valero,* 205 F.3d at 134. "If the ultimate use of the revenue benefits the general public then the charge will qualify as a 'tax'...." *Id.*

The impact fee ordinance was imposed by Anne Arundel

11

County, subjects all new homes to the charge and funds school construction; as such, the impact fee ordinance is a tax for the purposes of the TIA.

Accordingly, the TIA bars the Court from enjoining or restraining the ordinance because there is a "plain, speedy and efficient remedy" available under state law.  A state law remedy is "plain, speedy and efficient" if it "provides the taxpayer with a 'full hearing and judicial determination' at which she may raise any and all constitutional objections to the tax." *California v. Grace Brethren Church,* 457 U.S. 393, 411 (1982). This inquiry "involves an examination of state law to determine whether a taxpayer who follows the proper channels can receive adequate judicial review under state law." *Collins Holding Corp.,* 123 F.3d at 800.

If Herron has a viable claim against the Defendants, it may be brought in the Maryland Tax Court through the impact fee's refund provision.  Under § 7-110 of the Impact Fee Ordinance, if the funds collected have not been expended or encumbered within six years of their collection, a current property owner may apply to the Comptroller for a refund with interest. § 7-110.

Herron may also challenge the legality of the fee in the Maryland Tax Court under Article 24, § 9-710 of the Annotated Code of Maryland which provides that:

A claim for refund may be filed with the tax collector who

12

collects the tax, fee, charge, interest, or penalty by a claimant who:...(2) Pays to a county or municipal corporation a tax, fee, charge, interest, or penalty that is erroneously, illegally, or wrongfully assessed or collected in any manner.

Under § 9-712 the tax collector investigates the claim, conducts a hearing and then makes a final determination on the claim. § 9-712(a),(b). This final determination can then be appealed to the Maryland Tax Court. § 9-712(d)(1). The Tax Court's ruling can be appealed to the Circuit Court and ultimately to the Court of Special Appeals. § 13-532(a).

Maryland's statutory scheme provides judicial review and therefore satisfies the TIA's requirement of a "plain, speedy and efficient" remedy. As a result, the TIA bars the Court's review of the impact fee ordinance.


B.  Plaintiff's Motion for Class Certification

Herron seeks to bring this action as a representative of all "individuals who either reside or do business in the City of Annapolis and are current property owners that have paid development impact fees since 2001." Plaint. Motion for Class Cert., ¶ 1.

A district court may, in its discretion, order that an action proceed as a class action only if it finds that the requirements of Federal Rule of Civil Procedure 23 have been satisfied. Fed. R. Civ. P. 23.

Federal Rule of Civil Procedure 23(a) provides that a member of a class can sue on behalf of all class members where:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Plaintiffs bear the burden of demonstrating that the requirements of 23(a) have been met and at least one of the requirements of 23(b) is satisfied.[1]  *Gariety v. Grant Thornton, LLP*, 368 F.3d 356 (4th Cir. 2004); *Lienhart v. Dryvit*, 255 F.3d

---

[1]Under Rule 23(b) a class action can be maintained if the prerequisites of 23(a) are satisfied and in addition:

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
>> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
>> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

138 (4ᵗʰ Cir. 2001).  Failure to establish one requirement will defeat the certification effort.  *Buford v. H&R Block*, 168 F.R.D. 340 (S.D. Ga. 1996); *Haywood v. Barnes*, 109 F.R.D. 568 (E.D.N.C. 1986).

Herron argues that class certification in this case is necessary because: 1) the number of class members is so numerous that joinder is impracticable (numerosity); 2) she has a claim that is typical of all members of the class (typicality); 3) she can adequately represent all members of the class; 4) there is a risk that separate actions by individual class members could create inconsistent adjudications which would establish incompatible standards of conduct for class opponents (Rule 23(b)(1)(A)); 5) there is a risk that individual adjudications would impair the abilities of non-party members to protect their interests (Rule 23(b)(1)(B); and 6) common questions of law and fact predominate over questions affecting individual class members (Rule 23(b)(3).  Defendants argue that Herron has failed to satisfy the requirements of Rule 23(a) because, *inter alia*, she has failed to show that she is a member of the purported class.

The Supreme Court has repeatedly held that under either Rule 23(a)(4) or an unwritten pre-requisite of Rule 23, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *East*

*Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395 (1977); *see also Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997); *Bailey v. Patterson*, 82 U.S. 549 (1962); *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248 (4th Cir. 2005); *Skipper v. Giant Food*, 68 Fed. Appx. 393, slip op. (4th Cir. 2003); *Perry v. City of Norfolk*, 194 F.3d 1305, slip op. (4th Cir. 1999); *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998); *Bullock v. Board of Education*, 210 F.R.D. 556 (D.Md. 2002); *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492.

As noted above, Herron has not established that she directly or indirectly paid the impact fee.  Thus, Herron has failed to show that she is a member of the proposed class: she has failed to show that she has the same interest or has suffered the same injury as the class members.  Accordingly, Herron is ineligible to represent the proposed class, and her motion for class certification must be denied.

September 21, 2005                    _____/s/_____
Date                                  William D. Quarles, Jr.
                                      United States District Judge